■ HANNELORE ADAMSONS, Respondent, v AMERICAN AIRLINES, INC., Appellant. — Judgment, Supreme Court, New York County (Wallach, J.), entered January 7, 1981, after a jury trial, in favor of the plaintiff for $500,000, affirmed, with costs. The single issue presented on this appeal is the legal sufficiency of the evidence to sustain the verdict. On that issue, it is fundamental that plaintiff is entitled to the benefit of every reasonable factual inference consistent with the evidence. The jury could reasonably have found that in conversations that occurred the day before the flight in question between officials of the defendant and a friend acting on behalf of the plaintiff, that the defendant learned, or should have learned, that plaintiff was a seriously sick woman who was flying to New York City for urgently required medical attention; that defendant's officials, aware of defendant's requirements under its tariff, as plaintiff's friend was not, were told enough to put them on notice that a question of the application of its policies might be involved that required clarification; that if defendant's officials had elicited information that the situation reasonably required it to elicit, arrangements could have been made, consistent with defendant's policies, that would have permitted plaintiff to leave on the originally scheduled flight. With regard to the events that occurred at the airport preceding the departure of the plane, the jury could reasonably have found that defendant's representatives did not inquire as to plaintiff's possession of a medical certificate and that the absence of such a certificate was not a factor in the decision to refuse to permit plaintiff to take the flight; that defendant's representatives were aware of the relevant facts in time to have permitted arrangements to have been made for plaintiff to take the flight if she and those with her had been timely informed of defendant's requirements; and that the refusal to permit plaintiff to take the flight occurred at a time when defendant was aware of the seriousness of her condition and the urgency of the flight. From the foregoing factual conclusions that the jury could reasonably have reached on the basis of the evidence, we believe that the evidence was legally sufficient to sustain the verdict. Concur — Sandler, J. P., Markewich and Bloom, JJ.

Silverman, J., dissents in a memorandum as follows: I would reverse the judgment and dismiss the complaint. Defendant airline had discretion — not to be tested by standards of negligence — to refuse to accept this passenger. Whether the discretion was wisely exercised or not, there was not such an abuse of discretion or arbitrary action as would warrant imposition of liability on the airline, either by court or jury. By statute an air carrier may refuse transportation of a passenger "when, *in the opinion of the carrier,* such transportation would or *might* be inimical to safety of flight." (US Code, tit 49, § 1511, subd [a]; emphasis added.) By defendant's filed tariff the airline "will refuse to carry, cancel the reserved space of, or remove enroute any passenger when: (a) such action is necessary for reasons of safety * * * (c) The * * * physical condition of the passenger is such as to — (i) require special assistance of carrier; or * * * (iii) involve any hazard or risk to himself or to other persons or to property." Here the airline saw the passenger for the first time three quarters of an hour before departure time, and then for the first time could see concretely how ill the passenger was. It was obvious that the proposed passenger was very sick. The illness was undiagnosed; the possibility of infectious origin had not been ruled out; her legs were paralyzed; she was

brought to the airfield in an ambulance on a stretcher and taken from the stretcher to a wheelchair. She obviously experienced great pain and suffering in the very act of being transferred and placed in the wheelchair and of sitting in the wheelchair. She had a catheter in her attached to a Foley urine disposal bag. No special preparations, other than the wheelchair — nor any modification of seats — had been made or requested to accommodate her. There was no way of knowing what assistance she might need in the course of the proposed three-hour flight, much of it over ocean. She was traveling alone. Only after the plane had started to taxi on the runway did the friend who was with plaintiff at the airport suggest that she would be willing to accompany the plaintiff to New York. There is no dispute that the airline was acting in good faith, based solely on the passenger's apparent condition, in refusing to carry her. Surely the airline must resolve doubts about safety of passengers against assuming the risk. During substantially the entire brief time between plaintiff's arrival and the plane's departure, the airline's employees were actively engaged in consideration and discussion of whether to take her. Perhaps, by hindsight, the time might have been otherwise occupied; further medical inquiries made; inquiries made as to whether arrangements could be made at the last minute to have plaintiff accompanied by some medically qualified person (who had not planned to accompany her), etc. But I do not think there is room to say that within the brief time available the airline so grossly abused its discretion as to warrant the imposition of liability.